**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **TERRANCE ROBERT HENDERSON,** | ) | |
| **Plaintiff,** | ) | **CASE NO. 7:19CV00420** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAPPY SMITH, ET AL.,** | ) | **By:  Hon. Glen E. Conrad** |
| **Defendants.** | ) | **Senior United States District Judge** |

In this civil rights action under 42 U.S.C. § 1983, plaintiff Terrance Robert Henderson, a Virginia Department of Corrections ("VDOC") inmate proceeding pro se, alleges that the defendant physicians, Dr. Happy Smith and Dr. Benny Mullins, acted with deliberate indifference to his serious medical needs.  After review of the record, the court concludes that these defendants are entitled to summary judgment.

I.  BACKGROUND.

A. Plaintiff's Allegations.

On February 27, 2017, Henderson was transferred from Sussex I State Prison ("SISP") to Wallens Ridge State Prison ("WRSP"), both operated by the VDOC.  During a medical intake screening, Henderson told WRSP nursing staff that he suffers from severe gastric and digestive disorders—gastroesophageal reflux disease ("GERD"), dyspepsia, and esophagitis.  At SISP, for these conditions, Henderson was taking medications (Zantac and Protonix) and received a special "no bean" diet.  Compl. 4, ECF No. 1.  WRSP staff advised Henderson that he would not receive a special diet at WRSP.  A WRSP physician examined Henderson on March 13, 2017.  He, too, advised Henderson that he would not prescribe a special diet and that Henderson should simply avoid eating foods that irritated his gastric problems or eat them in small amounts.

> Henderson states that throughout 2017 and 2018 at WRSP, his gastric and digestive issues
>
> became increasingly worse. [He] filed numerous sick call requests, complaints, and grievances advising medical staff. . . . [He] was examined by [the defendant physicians Benny Mullins and Happy Smith] on numerous occasions and [he] constantly advised [them] that the medications that he was receiving were not effective and that he was experiencing constant stomach pain, vomiting, nausea, weight loss, diminished health, etc.

Id. at 5.  In late 2018, Henderson had appointments with an outside gastric specialist and underwent tests, which determined that he had "severe gastric (stomach[ ]) trauma and damage to his esophagus." Id.  The specialist recommended small meals throughout the day, elevating the head during sleep, and a medication change to Reglan.  Dr. Mullins noted these recommendations, but advised Henderson that whether he received the recommended treatments depended on "the higher-ups." Id.  When Henderson complained about not receiving all of the recommended treatments, the WRSP medical administrator advised him that the facility physician determines an inmate's course of treatment.

Henderson filed suit against Dr. Mullins and Dr. Smith under § 1983,[1] seeking monetary and injunctive relief.  He alleges that because of their deliberate indifference to his medical needs, he has suffered "constant, severe, stomach pain, loss of weight, daily nausea and vomiting," which adversely affected his sleep, exercise, and concentration, distracted from his religious practice and his mental pace, and negatively impacted his mental health disorders.  As relief, Henderson seeks

---

[1] In addition to § 1983, Henderson's complaint cites the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.  His mere citation to these statutes does not obligate the court to construct conceivable claims under this authority, however.  See Considder v. Medicare, No. 3:09cv49, 2009 WL 9052195, at *1 (W.D. Va. Aug. 3, 2009) (emphasizing that a pro se plaintiff must "allege facts that state a cause of action" and that courts are not required "'to conjure up questions never squarely presented to them'") (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).  Rather, the court construes Henderson's complaint as presenting claims that the defendants acted with deliberate indifference to his serious medical needs, a claim actionable under § 1983 and the Eighth Amendment.

monetary damages, injunctive relief ordering appropriate treatment, and a transfer to a facility with a hospital or infirmary.

B.  Defendants' Evidence.

The defendants, Dr. Smith and Dr. Mullins, are physicians who were responsible for providing medical care to inmates at WRSP during the times at issue in this lawsuit.  Dr. Mullins has provided his declaration, Mem. Supp. Mot. Summ. J. Mullins Decl., ECF No. 37-1, concerning Henderson's medical treatment at WRSP from February 2017 to December 2019, based on his recollection of Henderson and his review of the medical records maintained in the ordinary course of business by WRSP staff.  As part of Dr. Mullins' training and experience, he knows standard practices for maintaining medical records, including the use and interpretation of shorthand terms.

Dr. Mullins also has attained knowledge regarding the diagnosis and treatment of gastroesophageal reflux disease ("GERD").   Generally, GERD occurs when stomach acid frequently flows back into the esophagus.  Most people successfully manage GERD symptoms through lifestyle changes and over-the-counter medications.  Henderson's course of medical care at WRSP, as summarized herein, is undisputed, except where otherwise noted.

When Henderson arrived at WRSP in February 2017, the medical department prescribed Protonix 40 mg by mouth daily for one year for his GERD condition, a medication prescribed to him at his previous facility.  Protonix is prescribed to alleviate stomach and esophagus problems by decreasing the amount of acid produced in the stomach.

On March 3, 2017, a provider saw Henderson for a complaint regarding his request for a "no bean/no soy diet," after he claimed soy, beans, and dairy aggravated his GERD symptoms. Henderson's medical records reflected no history of allergies to soy, beans, or dairy, however. VDOC policy authorizes a no bean/no soy diet only for inmates with a documented allergy or with

special approval by the VDOC's Health Services Unit Chief Physician.  Because Henderson did

not have a documented allergy or a special diet authorized by the chief physician, Dr. Mullins

reports that the WRSP medical department could not change his diet based only on Henderson's

reported symptoms.  Rather, the provider recommended that Henderson avoid foods with soy,

beans, or dairy, if those food items aggravated his GERD symptoms.

On April 19, 2017, a provider saw Henderson based on a report that he was requesting to

change the medication for his GERD symptoms.  The provider discontinued Henderson's Protonix

and started him on 150 mg of Zantac by mouth daily for one year.[2]

On July 7, 2017, Henderson filed a sick call request and a doctor examined him two days

later.  Based on his complaints of GERD symptoms, the doctor increased his Zantac prescription

from 150 mg to 300 mg.  Medical records do not indicate that Henderson made any further

complaints regarding his GERD in 2017.

On January 11, 2018, a provider saw Henderson for complaints of GERD-epigastric pain.

The doctor noted that Henderson exhibited no pallor, his abdomen was soft, and his vitals were

normal.  The doctor ordered a stool sample to be tested for Helicobacter pylori ("H. pylori")

infection, which can cause peptic ulcers, with a follow up appointment on the test results.  The

doctor also discontinued Henderson's Zantac prescription and prescribed Protonix 40 mg by mouth

daily for ninety days and Bentyl 20 mg twice a day for seven days to help reduce symptoms of

stomach and intestinal cramping.

On February 14, 2018, results from Henderson's stool sample showed that it tested positive

for H. pylori.  A provider placed Henderson on clarithromycin 500 mg twice a day for fourteen

---

[2]  Henderson asserts that he did not request a change to Zanax and that he informed both doctors that this
medication had not been effective in the past to alleviate his symptoms.  See Resp. ¶ 10, ECF No. 39.

days, amoxicillin 1000 mg twice a day for fourteen days, and Prilosec 20 mg twice a day for fourteen days to treat the H. pylori infection.

On March 26, 2018, a provider saw Henderson for reports of pain in his abdomen. The provider noted that vitals were normal, started Henderson on Tylenol 325 mg two by mouth, twice daily for ninety days, and ordered Protonix 40 mg daily for a year.

On April 9, 2018, a provider saw Henderson again for mid-abdominal pains and ordered a stool sample to be tested for H. pylori. The provider started Henderson on Bentyl 20 mg twice daily for sixty days, and requested a follow up appointment after the results of the stool exam. On May 7, 2018, the results of Henderson's H. pylori labs were negative.

On June 4, 2018, a provider saw Henderson for complaints that Bentyl was not helping to relieve his symptoms. The provider noted no signs of pallor or jaundice and normal vital signs, and prescribed 30 cc Mylanta twice a day for a month.

On July 23, 2018, during a chronic care follow up visit for hypertension, Henderson's weight was low. He reported GERD with reflux for about ten years. His vitals were normal, he had no signs of edema or pallor, and his abdomen was soft. The provider started Henderson on Zantac 150 mg twice a day for ninety days. Based on Henderson's continued reports of abdominal pain and a negative H. pylori test, the provider requested an outside consult for an upper GI endoscopy. The medical department scheduled the appointment on August 10, 2018. On August 27, 2018, a provider also ordered a CT of Henderson's abdomen and pelvis, which Henderson underwent on September 4, 2018. On September 17, 2018, a provider examined Henderson and started him on Boost supplement drinks twice a day for thirty days. The results of Henderson's abdomen CT showed mild signs of GERD gastritis, but the small bowel appeared normal. A provider examined Henderson again on October 30, 2018, but the requested upper endoscopy

(although scheduled) had not yet been completed.  The provider ordered Zantac 150 mg twice daily for 180 days and Boost twice daily for thirty days.  On December 11, 2018, a provider examined Henderson again and continued him on Boost twice daily for thirty days.

On January 3, 2019, after the upper endoscopy was conducted, an outside physician examined Henderson and diagnosed reflux disease and esophagitis.  The specialist recommended that Henderson eat five small meals throughout the day, elevate his head at night, and receive Reglan 5 mg twice daily for 180 days.  The outside physician also recommended a consult with a gastroenterologist and a follow-up appointment in three months.  A WRSP provider continued Henderson's Boost order for sixty days, effectively spreading out his meals, and ordered the recommended Reglan prescription and elevating of his head at night.[3]

On March 18, 2019, a provider saw Henderson for follow up and complaints of new symptoms—sharp and burning stomach pain.  The provider discontinued Henderson's Reglan and Zantac and placed him on Bentyl 20 mg twice daily for sixty days, with a request for a follow up in sixty days.  The provider also ordered a stool sample for H. pylori testing and weekly weight checks.

A provider examined Henderson on April 29, 2019, for a complaint about weight loss.  Henderson's exam was normal, and his weight was normal for his height.  The provider ordered a follow up in two months.

On June 3, 2019, a provider saw Henderson for complaints about his stomach.  The provider placed a Quality Medical Care request for an outside consultation and prescribed Excedrin 2 by mouth twice a day for twelve days, Bentyl twice a day for 180 days, and Protonix 40 mg daily for 180 days.

---

[3] Henderson claims that WRSP doctors did not provide him any specially designed materials to elevate his head at night, but he does not explain why he could not do so with items he possessed in his cell.

6

On June 11, 2019, an outside physician saw Henderson for a follow up after his upper endoscopy.  The outside physician recommended an evaluation by a gastroenterologist, but did not recommend any change in medications.

On November 13, 2019, a gastroenterologist conducted an esophagogastroduodenoscopy ("EGD") on Henderson.  The results of this procedure indicated that Henderson had signs of mild gastropathy, but had an otherwise normal esophagus, gastroesophageal junction, and duodenum. On December 20, 2019, Henderson tested negative for an allergy to beans.

Henderson filed this § 1983 action in June 2019.  He seeks monetary damages and injunctive relief in the form of proper medical care.  The defendant doctors have filed a motion for summary judgment, supported with affidavits and medical records, arguing that they did not act with deliberate indifference to Henderson's medical needs.  Henderson has responded to their motion, making the matter ripe for disposition.

## II.  DISCUSSION.

A court should grant summary judgment only when the pleadings, responses to discovery, and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Id. at 255.  To be successful on a motion for summary judgment, a moving party "must show that there is an

absence of evidence to support the non-moving party's case" and that "the evidence is so one-sided that one party must prevail as a matter of law." Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky., 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions, or answers to interrogatories, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at 256-57.

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).[4] To hold an official liable under § 1983, the plaintiff must state facts to affirmatively show that the officer acted personally to deprive the plaintiff of or violate his constitutional rights. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).

An inmate's Eighth Amendment protections against cruel and unusual punishment include a right to the medical care necessary to address his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Specifically, a prison official's "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

The medical need portion of this legal standard is objective. It requires showing that the inmate's medical condition is "serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. The other portion of the standard, deliberate indifference, is subjective. The plaintiff must show that each defendant knew of and disregarded an excessive risk to inmate

---

[4] The court has omitted internal quotation marks, alterations, and/or citations here and throughout this memorandum opinion, unless otherwise noted.

safety or health.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  It is not sufficient to show that an official should have known of a risk; rather, the official "must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk of harm posed by the official's action or inaction."  Jackson, 775 F.3d at 178.  "This deliberate indifference standard is not satisfied by a showing of mere negligence, a mere error of judgment or inadvertent failure to provide medical care, or mere disagreement concerning questions of medical judgment."  Germain v. Shearin, 531 F. App'x 392, 395 (4th Cir. 2013); Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) ("[T]he essential test is one of medical necessity and not simply that which may be considered merely desirable.").

The court has reviewed the records and concludes that Henderson's complaints about the treatment decisions by Dr. Mullins and Dr. Smith are nothing more than disagreements with their medical judgments about the course of treatment and the timing of referrals and diagnostic testing. Such disagreements are not actionable under § 1983.[5]  The record evidence indicates that these doctors did not ignore Henderson's medical needs, as he alleges.  The undisputed medical records indicate that they considered his complaints promptly when received, recommended dietary adjustments he should make, adjusted or changed his medications and dosages, ordered diagnostic testing and medication to address the results, referred him to specialists who ordered diagnostic tests, and considered and implemented recommendations from those specialists.

When Henderson first arrived at WRSP, while the doctors did not find medical reasons to order a bean-free diet for him, they advised him to avoid the foods that aggravated his GERD, such as beans, soy, and dairy.  Henderson would have preferred to receive a specialized diet like the

---

[5] The defendants also argue that Henderson's GERD condition is not a serious medical need, given the results of diagnostic testing conducted in 2019.  However, the doctors' own decisions to continue Henderson on medications for months and years indicates that they consider his symptoms serious enough to warrant treatment.

one provided to him at SISP.  He complains that simply not eating the offensive foods from his regular meals would have caused him to go hungry.  He does not allege, however, that he ever stopped eating the problem foods to alleviate his symptoms.  Nor do the undisputed medical records indicate that his weight dropped below the amount considered normal for his height throughout the time period at issue in this lawsuit.  Moreover, when Henderson complained of weight loss, providers prescribed Boost nutritional supplements.

Throughout their treatment of Henderson's GERD issues from 2017 to 2019, Dr. Mullins and Dr. Smith attempted to address his symptoms with different medications and dosages.  They prescribed, at different times, Protonix, Zantac, Bentyl, Mylanta, and Reglan.  It is undisputed that Henderson, at times, went for weeks or months without further complaints to the defendants about his GERD issues.  When Henderson tested positive for H. pylori or displayed possible symptoms of that malady, the defendants ordered appropriate tests and prescribed antibiotics to address that issue when he tested positive.  They also referred him to multiple specialists outside the VDOC system and adjusted his treatment plan to meet recommendations from those specialists.  Contrary to Henderson's allegations, the tests from the specialists did not reflect any severe damage to his esophagus or other digestive organs.

In reviewing the record, the court simply cannot find that Henderson has presented evidence on which he could persuade a fact finder that Dr. Mullins or Dr. Smith knew that Henderson's digestive conditions required different treatment, but failed to provide reasonable

treatment adjustments or changes to address those issues.[6]   Thus, the court concludes that

Henderson has not demonstrated a necessary element of deliberate indifference and that the

defendants are entitled to summary judgment as a matter of law.   An appropriate order will issue

herewith.

The court will send a copy of this memorandum opinion and the accompanying order to

plaintiff and counsel of record for the defendants.

**ENTER**:  This _4th_ day of March, 2021.

_____
Senior United States District Judge

---

[6]   The court recognizes that Zantac and other ranitidine medications have been removed from the market at the request of the U.S. Food and Drug Administration ("FDA"), because they may contain unacceptable levels of a chemical considered to be "a probable human carcinogen (a substance that could cause cancer)."  See Press Release, FDA, FDA Requests Removal of All Ranitidine Products (Zantac) from the Market (Apr. 1, 2020), available at https://www.fda.gov/news-events/press-announcements/fda-requests-removal-all-ranitidine-products-zantac-market (last visited Mar. 4, 2021).  The FDA's actions have no bearing on this case, however, since they were taken well after the events described in the complaint.  As noted above, Henderson's Zantac prescription was discontinued in March of 2019, a year before the FDA issued its removal request.  Thus, whether the concern is the prescription or nonprescription of Zantac, the court does not believe that any Eighth Amendment claim of deliberate indifference to serious medical needs is implicated.